United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY,[2] <br> Commissioner of Social Security, <br><br> Defendants. | Case No. 23-cv-04712-TSH <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 16, 18 |

## I.   INTRODUCTION

Plaintiff Lisa R. moves for summary judgment to reverse the decision of Defendant Martin O'Malley, Commissioner of Social Security, denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 16.  Defendant cross-moves to affirm.  ECF No. 18.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.[3]

## II.   PROCEDURAL HISTORY

On June 13, 2017, Plaintiff filed an application for Title II, Social Security Disability Insurance, and Title XVI, Supplemental Security Income disability benefits, with an onset date of January 16, 2017.  Administrative Record ("AR") 211-28.  She alleges disability based on a

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rule of Civil Procedure Rule 25(d), he is therefore substituted for Kilolo Kijakazi as the defendant in this suit.

[3] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 8.

1   combination of impairments including irritable bowel syndrome ("IBS") and degenerative disc
2   disease. AR 211-18, 257-64. Following administrative proceedings, on February 27, 2019, an
3   Administrative Law Judge ("ALJ") found Plaintiff was not disabled. AR. 12-23. Plaintiff
4   requested review of the ALJ's decision by the Appeals Council, which was denied on June 16,
5   2021. AR 1-6. Plaintiff then filed a civil action in this District. On April 15, 2022, Magistrate
6   Judge Kandis Westmore granted the parties' stipulation to remand the matter for further
7   proceedings. AR 1352-53.

On May 15, 2023, after a new hearing, the ALJ issued a partially favorable decision finding that Plaintiff was disabled as of August 1, 2021, but not before that date. AR 1380-98. At issue now is Plaintiff's claim for disability from the period between her alleged onset date of January 16, 2017 and August 1, 2021.

### III. ISSUES FOR REVIEW

Plaintiff raises three issues on appeal: (1) Social Security Ruling 18-1p and the medical evidence supports the onset date of January 16, 2017; (2) the ALJ failed to follow the Appeals Council's remand order because the RFC is not supported by substantial evidence and the ALJ failed to properly evaluate Plaintiff's subjective symptoms; and (3) the ALJ improperly rejected the lay witness testimony of Plaintiff's husband.

### IV. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since January 16, 2017, the alleged onset date. AR 1386.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments since the alleged onset date of disability, January 16, 2017: Sjogren's syndrome; IBS; obesity; fibromyalgia; cervical and lumbar spine degenerative disc disease; and asthma. AR 1386. Beginning on the established onset date of disability, August 1, 2021, in addition to those severe impairments, the ALJ found Plaintiff had the following severe impairment: depression, post-acute sequelae of COVID-19 with neurological symptoms. *Id.*

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 1388.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

1 the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

2 despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

3 perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

4 that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

5 it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can

6 perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ

7 determined that prior to August 1, 2021, Plaintiff had the RFC

> to lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk 6 of 8 hours. She could sit 6 of 8 hours. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could do work that does not involve exposure to atmospheric conditions as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO). She could do work not involving climbing ladders, ropes, or scaffolds, operating hazardous, moving machinery, driving, or unprotected heights. She was precluded from production-pace work, such as an assembly line.

14 AR 1389. Since August 1, 2021, the ALJ determined Plaintiff

> has had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and sit 6 of 8 hours as well as occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can do work that does not involve exposure to atmospheric conditions as defined in the DOT) and SCO. She can do work not involving climbing ladders, ropes, or scaffolds, operating hazardous, moving machinery, driving, or unprotected heights. She is precluded from production-pace work, such as an assembly line. The claimant could perform standing and walking 4 of 8 hours and she would incur one-hour unscheduled break in addition to normal breaks.

21 AR 1394. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work

22 since January 16, 2017. AR 1395.

23 At step five, the burden shifts to the agency to prove that "'the claimant can perform a

24 significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting

25 *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely

26 on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

1   P, App. 2,[4] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted).

2   "[A] vocational expert or specialist may offer expert opinion testimony in response to a

3   hypothetical question about whether a person with the physical and mental limitations imposed by

4   the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

5   either as the claimant actually performed it or as generally performed in the national economy."

6   20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of

7   Occupational Titles ("DOT").[5] *Id.* Here, the ALJ determined that, prior to August 1, 2021,

8   considering the claimant's age, education, work experience, and residual functional capacity, there

9   were jobs that existed in significant numbers in the national economy that the claimant could have

10  performed, AR 1396, but as of August 1, 2021, there are no jobs that exist in significant numbers

11  in the national economy that she can perform, AR 1397. As such, the ALJ determined Plaintiff

12  was not disabled prior to August 1, 2021, but she became disabled on that date. *Id.*

### B.  Social Security Ruling 18-1p

Plaintiff argues Social Security Ruling ("SSR") 18-1 supports an onset date of disability of January 16, 2017. Pl.'s Mot. at 10. Plaintiff's motion block quotes from SSR 18-1p and argues that "Social Security Ruling 18-1p describe[s] the factors an ALJ should consider in determining an onset date of disability" and the ALJ "failed to properly apply SSR 18-1 in determining the onset date of [her] disability." However, Plaintiff does not specify which factors the ALJ failed to consider. "Because Plaintiff has failed to raise a specific claim of legal error, the Court proceeds to consider her other arguments regarding the ALJ's errors in determining the disability onset

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[5] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

1    date." *Jacqlyn S. v. Kijakazi*, 2022 WL 3018142, at *2 (N.D. Cal. July 29, 2022).

2    **C.    Plaintiff's Testimony**

3        On October 7, 2022, the Appeals Council issued an order vacating the previous decision and remanding the case to an ALJ. AR 1359-61. As part of its order, the Appeals Council noted that one of the issues for the ALJ to resolve on remand was that the prior decision did not adequately evaluate Plaintiff's IBS or provide an adequate explanation as to why the ALJ had discounted her testimony regarding the specific limitations caused by her IBS. AR 1359-60. Plaintiff's testimony indicated that the most significant issue caused by her IBS necessitates up to eight restroom breaks each day, each lasting from thirty to sixty minutes, that she is often unable to leave the house because she must be near a restroom, and there have been times she cannot make it to the restroom in time and has had accidents. AR 40, 47-48, 1312-15. Plaintiff explained that she cannot predict when she will need to use the restroom or how long she must be in there at any given time. AR 56-57.

    As directed by the remand order, the ALJ further evaluated IBS and related symptoms and found Plaintiff was disabled beginning August 1, 2021 due, in large part, to IBS. AR 1394. However, prior to that date, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported." AR 1390. Plaintiff argues the objective medical evidence supports her testimony and refutes the ALJ's rationale. Pl.'s Mot. at 6.

    **1.    Legal Standard**

    The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported

by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (cleaned up).

"At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation and internal quotations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). In determining whether an individual's symptoms will reduce his capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (citations and internal quotation marks omitted). The clear and convincing standard "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

**2.     Analysis**

In the decision, the ALJ summarized Plaintiff's testimony as follows:

> At the hearing, the claimant testified that she did not drive due to medication side effects. She noted being lightheaded, sleepy, and nauseated at times due to medications. She testified that she had cortisone and Toradol injections to help with pain in her jaw, scalp, neck area, fingers, and different areas of her back. She also noted a needle to her sacroiliac joint and acupuncture as well as fluid drained from her knees. The claimant testified that she could walk and stand for 20 minutes to a half hour. She noted she could sit for about 10 to 15 minutes and indicated that with recent change in medication it has been harder to sit. The claimant testified that she could not have done a desk job due to abdominal pain and constant need to use the bathroom. She also explained that bouts of IBS triggered low back and knee pain. The claimant acknowledged her earlier testimony that during a typical 8-hour workday she would be in the bathroom 6 times for 30 minutes to an hour each time, but that the duration could be longer at least a couple times a month. She explained that she would experience constipation and/or diarrhea as well as urgency. The claimant additionally noted bowel incontinence, which made her not want to leave home.

AR 1390. The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not fully supported prior to August 1, 2021." *Id.* In making this finding, the ALJ determined that Plaintiff's clinical workup prior to August 1, 2021 was unremarkable, despite her IBS diagnosis. *Id.* (citing 732, 778-79). As to the record in 2017, the ALJ acknowledged Plaintiff's reported bloating and other symptoms but found treatment was conservative, such as probiotics and stool softeners, with no clinical indication for further workup needed. *Id.* (citing 646, 649). The ALJ also acknowledged Plaintiff's IBS complaints in 2018 but again noted conservative management as well as later pain management which was reportedly helpful. AR 1391 (citing 731, 734, 777-78, 781, 4605). The ALJ also noted Plaintiff's activities of daily living, including a 2017 Hawaii trip and 2018 Disneyland trips. *Id.* (citing 630, 1115). In 2019 and 2020, the ALJ noted that Plaintiff sought medical care for a variety of other unrelated symptoms, and that symptoms that might otherwise be attributed to IBS appeared in the context of medication and not due to the condition. *Id.* (citing 1782, 1855-86, 2018). The ALJ also noted that Plaintiff's frequent diarrhea in 2020 was attributed to COVID, not IBS. *Id.* (citing 2109, 2134-36, 2151-52). After recovering from COVID, Plaintiff was noted to have only "slight" functional limitation. AR 2994. The ALJ noted Plaintiff had complaints of abdominal bloating without mention of diarrhea, and "[t]hrough 2020, there was again no clear IBS involvement and an abdominal CT showed normal results." AR 1391 (citing 2383-87, 2412-13, 2421-22, 2619-23). The ALJ also noted Plaintiff experienced diarrhea in July 2021, but IBS was not indicated. *Id.* (citing AR 2939). In general, the ALJ found that the medical record did not support the frequency or severity of the IBS symptoms Plaintiff reported prior to August 1, 2021:

> Such evidence over a three-and-a-half-year period or lack thereof runs contrary to the alleged chronicity of daily diarrhea or constipation with the alleged duration of restroom use. While treatment notes may not always capture the claimant's endorsed symptoms and severity, one would still expect to find greater mention than the record presented along with supporting clinical workup, which is notably absent here. Thus, the residual functional capacity addresses the claimant's intermittent gastrointestinal symptoms and a history of IBS by a general restriction to a reduced range of light work. Given the overall paucity of related complaints and signs, no further restriction is warranted before the established onset date.

AR 1391.

The Court finds the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony, and substantial evidence supports the ALJ's decision. The ALJ properly found that Plaintiff's allegations of disabling symptoms were not supported by the medical evidence. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). This could not be the ALJ's sole reason for rejecting Plaintiff's statements about symptoms, but it was a factor the ALJ was required to consider. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"); *Reyes v. Berryhill*, 716 Fed. App'x 714, 714 (9th Cir. 2018) (ALJ properly concluded plaintiff's testimony was not corroborated by normal medical findings).

Plaintiff argues the objective medical evidence supports her testimony regarding her diarrhea and refutes the ALJ's rationale. Pl.'s Mot. at 6. For example, she notes that on May 25, 2016, clinicians noted she was having bloating, fullness, and pain related to her IBS, and that she had diarrhea every other day with up to six bowel movements at each time. *Id.* (citing 438). In 2018 Plaintiff reported having loose stools and urgency up to six to eight bowel movements each day, with cramping pain. *Id.* (citing AR 777-78). A genitourinary examination on June 24, 2018 revealed Plaintiff had dysuria, frequency, and urgency. *Id.* (citing AR 1067). On September 27, 2018, Plaintiff continued to have loose stools and urgency with six to eight bowel movements per day and cramping pain. *Id.* (citing AR 731). While the ALJ did acknowledge this evidence (AR 1390-91), Plaintiff argues the ALJ erred in finding it represented a "paucity of complaints" and that there should have been more. Pl.'s Mot. at 6 (quoting AR 1391). Even if the ALJ was correct that the objective medical evidence did not support the frequency or duration of restroom use Plaintiff described in her testimony (which Plaintiff does not concede), Plaintiff argues the ALJ's rationale does not support an RFC finding which includes no restroom breaks at all. *Id.* at 8. However, as noted above, the clear and convincing standard "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*,

10

53 F.4th at 499. Although Plaintiff highlights select pieces of evidence to argue she was more limited than the ALJ determined, it is not the Court's role to second guess the ALJ's conclusions or substitute its judgment for the ALJ's. *See Ford*, 950 F.3d at 1149 ("the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities'") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). So long as substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints, a reviewing court will "not engage in second-guessing." *Thomas*, 278 F.3d at 959; *see Guillen v. Comm' r of Soc. Sec.*, 232 F. App'x 699, 701-02 (9th Cir. 2007) (rejecting claim where there was some evidence supporting the need for more than three to five bathroom breaks per eight-hour shift, but ALJ had reasonably found the claimant's subjective complaints not fully supported).

Further, contrary to Plaintiff's assertion that the ALJ did not include any limits relative to her IBS, the ALJ specifically noted that "the residual functional capacity addresses the claimant's intermittent gastrointestinal symptoms and a history of IBS by a general restriction to a reduced range of light work." AR 1391. Thus, the ALJ did consider the impairment and found associated limitations in determining the RFC. Plaintiff points to subjective reports on gastrointestinal symptoms, but the record does not include sufficient positive clinical findings or objective imaging to support the same prior to the established onset date. As detailed above, the ALJ also considered Plaintiff's conservative treatment. *Id.*

Additionally, an ALJ can consider a claimant's activities such as travel when evaluating symptom testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Smartt*, 53 F.4th at 499. The ALJ acknowledged that "vacationing itself is not dispositive of the ultimate issue, nor does it alone present a significant disparity in the alleged severity," and noted it was just one factor considered. AR 1391; *see Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ properly determined that claimant's "non-work activities . . . are

11

inconsistent with the degree of impairment he alleges").[6]

In sum, the ALJ provided valid reasons to discount Plaintiff's statements about her alleged symptoms and limitations. Because the ALJ's findings were reasonable and well supported by substantial evidence in the record, the Court must affirm, even if other interpretations of the evidence are possible. *See Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

**D.     Medical Evidence**

Plaintiff argues the medical evidence of record "shows long before the ALJ's chosen date of August 1, 2021, [she] experienced significant clinically supported symptoms that would have precluded her from working on a regular sustained basis." Pl.'s Mot. at 11.

**1.     Legal Standard**

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinion in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c. *See Woods*, 32 F.4th at 791-93 (embracing the Commissioner's new regulatory framework for evaluating medical opinions). The new regulations eschew the former hierarchy of medical opinions and no longer require the ALJ to afford greater weight to the opinions of treating physicians. *See id.* at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").

Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an

---

[6] In her reply, Plaintiff argues that the vocational expert's testimony "established that someone who would be off task for more than 10 percent of the workday could not sustain competitive employment." Reply at 5 (citing AR 1326.) While this is true, the vocational expert's testimony is based on a hypothetical presented during questioning by Plaintiff's attorney. It is not based on Plaintiff's RFC as determined by the ALJ.

12

understanding of the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

### 2.  Analysis

In support of her argument, Plaintiff lists the following subjective complaints:

- 5/26/16: Clinicians noted [Plaintiff] was having bloating, fullness, and pain related to her IBS. She had diarrhea every other day with up to 6 bowel movements at each time. (Tr. 438.)
- 2/27/18: [Plaintiff] was still having loose stools and urgency up to 6 to 8 bowel movements each day, with cramping pain. (Tr. 778.)
- 6/24/18: A genitourinary examination revealed [Plaintiff] had dysuria, frequency, and urgency. (Tr. 1067.)
- 9/27/18: [Plaintiff] continued to have loose stools and urgency with 6 to 8 bowel movements per day and cramping pain. (Tr. 731.)
- 1/2/19: [Plaintiff] reported abdominal pain related to IBS that flared when she ate certain foods. (Tr. 4761).
- 7/8/19: Dr. Akhtar noted [Plaintiff] had a history of both constipation and diarrhea due to IBS. (Tr. 1729.)
- 7/28/19: [Plaintiff] called her doctor to report stomach pain, nausea, diarrhea, shortness of breath and lightheadedness. This pain was keeping [Plaintiff] from doing her daily activities such as walking and bending. (Tr. 1782-83.)
- 2/20: IBS medications are refilled (Tr. 2018.)
- 3/24/20: Dr. Haris noted [Plaintiff] had tested positive for COVID-19. She was

13

> fatigued, had low energy, a headache, a mild cough, and body aches. She also had frequent diarrhea. (Tr. 2109.)
> - 7/28/20: Dr. Lim noted [Plaintiff] had chronic abdominal pain and IBS with diarrhea. She had been experienced new and severe bloating. (Tr. 2383.)
> - 10/17/20: [Plaintiff] was treated for 2 plus weeks of loose stool. (Tr. 2619.)
> - 8/4/20: Dr. Akhtar noted [Plaintiff] had been having increased abdominal bloating and was waiting for a CT scan to address this. (Tr. 2412.)

Pl.'s Mot. at 11-12. Plaintiff argues: "This chronology shows a repeated and uninterrupted pattern of abdominal bloating, fullness, pain, loose stools diarrhea, dysuria, frequency, and urgency related to her IBS," which "supports her alleged onset date of January 16, 2017. It does not support the ALJ's chosen onset date of August 1, 2021, which constitutes reversible error." *Id.* at 12.

However, while Plaintiff provides a list of her own subjective reports of gastrointestinal symptoms, she cites no medical opinion evidence. "A claimant's self-reported symptoms 'alone are not enough to establish that' a claimant is disabled." *Guillen*, 232 F. App'x at 701 (quoting 20 C.F.R. § 404.1528). Regardless, as discussed above, although the record reflects that Plaintiff had gastrointestinal symptoms, it also shows that examinations and imaging were unremarkable prior to the established onset date. *See* AR 1390-91. As such, the Court finds that substantial evidence supports the ALJ's decision.

**E.     Lay Witness Testimony**

Plaintiff's husband completed a questionnaire describing her limitations and testified as follows. AR 281-88. He noted Plaintiff's medication was not always effective for her pain and she has trouble sleeping at night because of her pain. AR 281-82. Plaintiff no longer styles her hair and takes a very long time in the restroom due to her IBS. AR 282. Plaintiff needs reminders to take her medications. AR 283. She used to cook full meals often, but now makes simple meals most of the time. *Id.* Plaintiff's symptoms are unpredictable and can change quickly. AR 285. If Plaintiff leaves the house, she must make sure she will have easy access to a restroom. AR 285-86. On the checkbox portion of the statement, Plaintiff's husband checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, seeing, memory, completing tasks, concentration, and using hands as abilities affected by Plaintiff's conditions.

14

AR 286.  He noted Plaintiff sometimes needs instructions repeated.  *Id.*  Plaintiff has difficulty handling stress and changes in routine.  AR 287.  Her medications cause drowsiness, dizziness, and headache, and there are some days she cannot get out of bed due to her symptoms.  AR 288.

The ALJ discounted Plaintiff's husband's statement, citing the same reasons the ALJ relied on in rejecting Plaintiff's own testimony, primarily the assertion that IBS "appeared infrequently and cursorily before the established onset date."  AR 1393-94.  Plaintiff argues the ALJ's finding is improper because it supports her own testimony she has unpredictable symptoms and needs restroom breaks of a frequency and duration the VE testified would be disabling.  Pl.'s Mot. at 14.  She argues the ALJ's failure to base her rejection of the lay witness statement on the record and to give specific and legitimate reasons germane to each witness is reversible error.  *Id.*

### 1.     Legal Standard

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted).  Such testimony is valuable precisely because it provides additional information that is not necessarily reflected in the medical records, including how an individual is able to function in the community and with what level of support.  *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 975-76 (9th Cir. 2000).  Thus, "[i]n evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  An ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114.

### 2.     Analysis

Here, Plaintiff's husband identified symptoms and limitations that are consistent with the limitations Plaintiff described, and the Court has already concluded that the ALJ did not err in assessing her credibility.  The ALJ found that, "like the claimant's alleged chronicity and severity of other symptoms, namely those related to IBS and exertional limits, the spouse's report is not

consistent with the overall evidence of record before the established onset date." AR 1393. Where a lay witness's testimony is similar to the claimant's own testimony regarding her subjective complaints, the ALJ's reasons given to reject the claimant's testimony are deemed sufficiently germane reasons to reject the lay witness testimony. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *Mary M. v. Kijakazi*, 2022 WL 891445, at *6 (S.D. Cal. Mar. 25, 2022) (ALJ's reasons proffered for rejecting a claimant's testimony applied equally to her husband's testimony even though the ALJ had not articulated any reasons regarding discounting of husband's testimony); *Madison L. v. Kijakazi*, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021) (ALJ's reasons for rejecting claimant's testimony also provided sufficient reasons for rejecting claimant's mother's testimony where the mother did not testify to any limitations beyond those testified to by the claimant herself); *Jenkins v. Saul*, 2020 WL 5760357, at *4 (N.D. Cal. Sept. 28, 2020) ("[The lay witness] did not testify to any limitations beyond those described by [plaintiff] herself. 'In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to claimant's.'") (quoting *Bennet v. Colvin*, 202 F. Supp. 3d 1119, 1130-31 (N.D. Cal. 2016)). For this reason, the decision must be affirmed.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 5, 2024

THOMAS S. HIXSON
United States Magistrate Judge

16